

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AES:LKG/AS          *271 Cadman Plaza East*
F#: 2020R00291         *Brooklyn, New York 11201*

September 1, 2020

By ECF and Email

The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Chierchio, et al.
                   Criminal Docket No. 20-306 (NGG)

Dear Judge Garaufis:

      The government respectfully submits this letter in opposition to defendant Christopher Chierchio's request to relate this case to United States v. Altieri, 20-CR-249 (BMC). See United States v. Chierchio et al., 20-CR-306 (NGG), ECF No. 40 ("Def. Mot."). In support of his motion, Chierchio argues that the facts in Altieri "arose out of the same charged schemes, transactions and events" as the Chierichio case, Def. Mot. at 1, because some of Chierchio's co-defendants had dealings with Altieri. The two cases did not arise from the same facts, and even if they did, Chierchio has not even attempted to make the required showing that judicial resources would be conserved or the administration of justice would be served by relating this case to Altieri, which was indicted just a month earlier but has not yet had occasion to involve the assigned district judge.

I.    Background

      A.    Charges in *Chierchio* and in *Altieri*

      On August 13, 2020, a grand jury returned a 21-count indictment against defendants Chierchio, Jason Kurland, Frangesco Russo and Francis Smookler. The charges are based in part on the evidence summarized in the government's letter filed in support of its request for permanent orders of detention against some of the defendants (the "Detention Letter"). See ECF No. 9.

      In short, as noted in the Detention Letter, the Chierchio indictment charges two schemes. First, Kurland, Chierchio, Russo and Smookler are charged with conspiring to commit

and committing money laundering and wire fraud offenses (including, for Kurland, honest services fraud), all stemming from the scheme by the defendants, together with others, to defraud Kurland's clients. Kurland is an attorney specializing in representing lottery winners, purporting to help them make sound investments. He abused his clients' trust by encouraging them to make large investments in entities run by Chierchio (a soldier in the Genovese crime family), Smookler (a former securities broker) and Russo, who, in turn, siphoned some of the investment money for themselves, and paid Kurland kickbacks for steering his clients to them. Kurland failed to disclose to his clients either the kickbacks or his relationship with the entities. On one occasion, Kurland simply transferred $19.5 million out of one of his clients' accounts without permission, much of which was ultimately funneled to Chierchio. Second, Russo and Smookler are also charged with committing and conspiring to commit extortionate extension of credit and extortionate collection of credit, for threatening to torture, shoot and kill Gregory Altieri and his family, because Altieri could not timely repay a usurious loan they extended him.

A little over month before the grand jury returned the Chierchio indictment, Altieri was indicted on a single count of substantive wire fraud for an unrelated scheme. See Altieri, 20-CR-249, ECF No. 1. As charged in the Altieri indictment, beginning in approximately August 2017 and continuing through October 2019, Altieri persuaded more than 80 individuals and entities to invest in his business of purchasing and selling jewelry in bulk, at "closeout" prices. See id. ECF No. 1, ¶¶ 2-3. By approximately May 2018, Altieri began running a Ponzi scheme and lying to investors; instead of using some of the investors' money to buy jewelry, Altieri paid off other investors, until the money ran out. Id. ¶¶ 4-8.

None of the defendants in Chierchio participated in Altieri's Ponzi scheme. Likewise, the government has no reason to believe that Altieri conspired with the Chierchio defendants to defraud Kurland's clients. To be sure, there are some touchpoints between the defendants in Chierchio and the defendant in Altieri: Russo, Smookler and Kurland sent money taken from one of Kurland's lottery-winning clients, through the entities they controlled, and on to Altieri. Russo and Smookler also extorted Altieri to collect a separate loan they had extended him. But the government is not aware of any evidence that Altieri was involved in the Chierchio defendants' scheme to defraud the lottery victims, or that he communicated with those victims, or that Chierchio participated in the extortion of Altieri, which stemmed from an unrelated "street loan." As a result, when the grand jury returned the Chierchio indictment, the government did not submit a relation letter. Nor, as explained below, is the government aware of any reason why the cases should now be assigned to the same judge.

  B. Procedural Background

On July 14, 2020, Altieri was arraigned via video conference by the duty magistrate judge, and his first appearance before the Honorable Brian M. Cogan is set for October 8, 2020.

This Court has already presided over one appearance in Chierchio and is familiar with the underlying charges. After the Honorable Lois Bloom arraigned the defendants on August 18, 2020, Your Honor heard argument on the government's appeal of Judge Bloom's decision to release Russo on bond. The following day, on August 20, 2020, the Court denied

2

Chierchio's request to modify the conditions of his pre-trial release (along with a similar request from Kurland). Chierchio followed that denial with the instant motion, in which he seeks his case to be transferred to Judge Cogan.

II.     Legal Standard

Local Rule 50.3.2(b)(1) provides for a "presumption that one case is 'related' to another when the facts of each arise out of the same charged criminal scheme(s), transaction(s), or event(s), even if different defendants are involved in each case." Subsection (b)(2) further provides that, "The presumption shall be overcome upon a determination by the relevant judges that reassignment would not achieve a significant savings of judicial resources or serve the interests of justice." Local Rule 50.3.2(c)(1) directs the United States Attorney's Office to "give notice to all relevant judges whenever it appears that one case may be presumptively related." The Rule indicates that the Office's obligations are "continuing" throughout the pendency of a case. Local R. 50.3.2(c)(3).

Notably, Local Rule 50.3.2(a)(4), provides that "this rule is adopted for internal management of the case load of the court and shall not be deemed to vest any rights in litigants or their attorneys." See also United States v. Davila-Bajana, 172 F.3d 38 (2d Cir. 1998) (rejecting as "legally baseless" a defendant's complaint grounded in the then-Guidelines for the Division of Business Among District for the Eastern District of New York partly because the rules were "adopted for the internal management of the case load of the court" and did not "vest any rights in the litigants or their attorneys"); United States v. Agate, 08-CR-76 (NGG), 2008 WL 699513, at *1 (E.D.N.Y. Mar. 13, 1998) ("[T]he court wishes to emphasize that Rule 50.3 and the other Local Rules . . . do not create any enforceable due process rights for defendants whose cases are subjected to the relation rule.").

III.    Discussion

Chierchio's contention that this case should be transferred to Judge Cogan fails for two reasons: the facts underlying the charges in Altieri and Chierchio did not arise out of the same criminal schemes, transactions, or events, and, in any event, reassignment would not achieve savings of judicial resources—let alone "significant" savings—nor would it serve the interests of justice.

   A.   The Facts of Altieri and Chierchio Did Not Arise Out of the Same Charges
        Criminal Schemes, Transactions, or Events

The charges in Altieri are unrelated to the charges in Chierchio. Altieri ran a Ponzi scheme using his business, LNA Associates. The Chierchio defendants were not a part of the scheme; they controlled separate entities that received money from Kurland's lottery-winning clients, and siphoned off some of those funds for their own personal use. Indeed, the government had no basis to charge the Chierchio defendants together with Altieri under Rule 8 of the Federal Rules of Criminal Procedure. See Fed. R. Crim. P. 8(a) (allowing joinder when, inter alia, the offenses "constitute parts of a common scheme or plan"); id. 8(b) (allowing joinder when the defendants participated "in the same act or transaction, or in the same series of acts or transactions."). Had it done so, the defendants would have been justified to move for severance.

3

Chierchio nevertheless points to two areas where the individuals charged in each case interacted with each other. First, he quotes from the Detention Letter and notes that Altieri is the person whom Russo and Smookler extorted to collect a "street loan" they had extended him. Mot. at 2-3. But just because Chierchio's co-defendants extorted Altieri does not mean that the schemes, transactions or events charged in Altieri in any way arose out of those underpinning the charges in Chierchio. They did not. Victimizing an individual who happens to be a defendant in another case does not mean that the two cases should be merged.

Second, Chierchio identifies the two times Kurland persuaded his clients to invest in a supposed Diamond District-based company, which was an apparent reference to Altieri's business. See Detention Letter at 8, 14.[1] Chierchio's co-defendants then transferred that money to one of their own entities, stole some of it, and wired at least some to Altieri. Notably, Chierchio was not involved in these transfers, and Altieri did not communicate with any of the victims of the Chierchio defendants' schemes. Although the Chierchio defendants' entities ultimately received some money back from Altieri, that money was never passed onto the Chierchio defendants' victims.

Accordingly, the facts underpinning the charges in Altieri do not arise out of the same schemes, transactions, or events as the charges in Chierchio. The fraud committed by the Chierchio defendants on their lottery-winning victims—inducing them to make investments at Kurland's direction and then stealing some that money—was not related to Altieri's Ponzi scheme. Put differently, each indictment charges separate defendants with separate schemes; while Altieri focused on pitching his clients to invest in the resale of wholesale jewelry, the Chierchio defendants targeted Kurland's lottery-winning clients.

B. Judicial Resources Would Not Be Saved and Administration of Justice Would Not Be Furthered by Transferring the Case to Judge Cogan

Even if the two cases arose out of the same scheme, transaction, or events, transferring the Chierchio case to Judge Cogan would be appropriate only if Your Honor and Judge Cogan determined that there would be "significant savings of judicial resources" or that "the interests of justice" would be served by the transfer. Local R. 50.3.2(b)(2). Chierchio does not attempt to make this showing, and for good reason—if anything, relating the cases would be inefficient.

The parties in Altieri have adjourned the first status conference until October while they engage in plea negotiations. Although the parties anticipate resolving the charges in that case without the need for a trial, in the unlikely event that there is a trial, the government's proof would not touch on any of the conduct alleged in Chierchio. Indeed, none of the evidence previewed in the Detention Letter, nor any other evidence of which the government is aware, would be admitted in any trial in Altieri. Likewise, the government's outlined proof in the Detention Letter does not mention the evidence that would be used to support the Ponzi scheme

---

[1] Although Kurland extracted investments from two victims based on this purported investment opportunity, the defendants may have sent the money to Altieri from only one of the victims.

4

allegations in Altieri. Even Chierchio co-defendants' extortion of Altieri would be proven almost entirely through recorded conversations. See Detention Letter at 29. At this time, the government does not anticipate calling Altieri as a witness at trial in this case.

The progression of both cases also shows that efficiency would be lost—not gained—by transferring the case. In Altieri, Judge Cogan has not had to preside over any proceeding or engage with any of the charges. The parties appeared once before a magistrate judge and will appear before Judge Cogan in October. In Chierchio, by contrast, this Court had to review the lengthy Detention Letter and hold a one-hour oral argument over Russo's detention, which required the Court to engage in every charge facing the Chierchio defendants and some of the underlying evidence. Since then, the Court has fielded requests from Chierchio and Kurland to modify the terms of their pre-trial release, both of which it denied. Next week, the parties are scheduled to appear, in person, for a status conference. In short, while Altieri was indicted a little over a month before Chierchio, only this Court has had to participate in any meaningful way.

For these reasons, neither the administration of justice would be served, nor judicial resources saved, by transferring this case.

IV. Conclusion

For the reasons above, the Court should deny Chierchio's motion to relate this case to Altieri.

Respectfully submitted,

SETH D. DuCHARME
Acting United States Attorney

By:  /s/
Andrey Spektor
Lindsay K. Gerdes
Assistant U.S. Attorneys
(718) 254-6475/6155

cc: Defense Counsel of record (by ECF)
    Clerk of the Court (NGG) (by ECF)

5