UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

CHRISTOPER CHIERCHIO, JASON KURLAND, FRANGESCO RUSSO, and FRANCIS SMOOKLER,

Defendants.

MEMORANDUM & ORDER
20-CR-306 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

Outstanding before the court are two issues relating to the government's seizure of Defendant Jason Kurland's law firm capital account. Kurland previously moved for the immediate release of the funds, which the court denied. Now, he continues to press for a *Monsanto* hearing to establish that there was no probable cause to seize the assets. The government opposes Kurland's motion and further objects to the court's permitting Kurland to submit an affidavit to justify the hearing on an *ex parte* basis.

For the reasons below, the court RESERVES decision on Kurland's motion for a *Monsanto* hearing and GRANTS the government's request to require Kurland to provide it a copy of his financial affidavit, should he submit one.

I. FACTUAL AND PROCEDURAL BACKGROUND

The court assumes general familiarity with the government's theory of this case. Kurland, a former partner at a major law firm, is charged with conspiracy to commit wire fraud, wire fraud, conspiracy to commit money laundering, money laundering, and honest services wire fraud. (*See generally* Indictment (Dkt. 1).) He is alleged to have turned his specialized legal practice advising winners of major lottery jackpots into a scheme that defrauded his clients of their winnings.

1

In the weeks after Kurland was arrested, the government obtained a "dual-purpose" criminal and civil forfeiture warrant, issued by Magistrate Judge Lois Bloom, to seize $247,859 in funds held in Kurland's law firm capital account. (*See* Gov't Opp'n Ex. B (Dkt 127-2).) Later, when Kurland's co-defendant Francis Smookler pleaded guilty, the court approved a preliminary order that forfeited, with Smookler's consent, his "right, title, and interest" in the same assets. (*See* Prelim. Order of Forfeiture (Dkt. 81).)

On February 22, 2022, the court issued a Memorandum & Order that denied Kurland's motion for the immediate release of the funds because the statutory grounds for doing so had been rendered moot. (*See* Mem. & Order (Dkt. 147).) The court reserved decision on Kurland's alternative motion for a *Monsanto* hearing to establish that there had been no probable cause to seize the assets, despite Magistrate Bloom's earlier finding to the contrary, and despite this court's endorsement of the preliminary order of forfeiture as against Smookler.

The government has argued that Kurland has not satisfied the standard of financial need he must meet to be entitled to a *Monsanto* hearing. (*See* Gov't Opp'n at 57-62.) Initially, the court agreed, denying Kurland's motion for failing to adequately demonstrate his need of the contested assets to fund his defense. (*See* Feb. 1, 2022 Order.) But the court granted him leave to renew the motion after submitting an *ex parte* affidavit making additional financial disclosures detailing his "net worth, provid[ing] a comprehensive list of his assets, [and] explain[ing] how he has been paying his significant living expenses." (*Id.* (quoting *United States v. Bonventre*, 720 F.3d 126, 133 (2d Cir.

2013)).)[1] The government then objected to the filing of the affidavit on an *ex parte* basis. (*See* February 17, 2022 Letter from the Government ("Gov't. Letter") (Dkt. 145).)

After further considering the issue, the court agrees with the government and vacates its prior order permitting an *ex parte* submission. If Kurland wishes to renew his motion, he may submit a sealed affidavit accompanied by proposed redactions for the public docket.

## II. KURLAND'S MOTION FOR A *MONSANTO* HEARING

### A. Legal Standard

The Second Circuit has held that "the Fifth and Sixth Amendments entitle a criminal defendant seeking to use restrained funds to hire counsel of choice to an adversarial, pre-trial hearing at which the court evaluates whether there is probable cause to believe . . . that the contested funds are properly forfeitable." *Bonventre*, 720 F.3d at 128.

To justify such a hearing, "all a defendant need do . . . is to demonstrate that he or she does not have sufficient alternative assets to fund counsel of choice." *Id.* at 131. Such a "financial showing" is required because the Sixth Amendment right to counsel "is not implicated unless the restraint actually affects the defendant's right to choose counsel and present a defense." *Id.*

The burden, however, is modest. *Bonventre* requires that a defendant must go "beyond the bare recitation of the claim[] that he or she has insufficient alternative assets to fund counsel of choice," but that the standard should nonetheless be "minimal." *Id*. at 128, 131. The "low threshold requirement" ensures that a defendant's motion be "not frivolous." *Id.* at 131.

---

[1] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted and all alterations are adopted.

### B. Discussion

The government has asked that the court require Kurland to provide it a copy of any affidavit he submits to the court *ex parte* in order to justify a *Monsanto* hearing. (*See* Gov't. Letter.) Because the court directed Kurland to hold any such filing in abeyance after receiving the government's objections, no such *ex parte* submission has been received.

Kurland argues that an *ex parte* submission is appropriate because disclosing detailed financial information to the government would put him between a Fifth Amendment rock and a Sixth Amendment hard place: forcing him to choose between exercising his right to make use of untainted funds to pay for his defense on one hand, and preserving his privilege against self-incrimination while pressing that argument, on the other. (*See* February 18, 2022 Letter from Telemachus P. Kasulis ("Kurland Letter") (Dkt. 146).) The government's response relies principally on *United States v. Harris*, 707 F.2d 653 (2d Cir. 1983), and a handful of lower court decisions interpreting it. *See United States v. Avenatti*, No. 19-cr-374-1 (JMF), 2021 WL 3168145, at *9 (S.D.N.Y. July 27, 2021); *United States v. Kolfage*, 537 F. Supp. 3d 559, 567 (S.D.N.Y. 2021). It argues that *Harris* establishes a strong presumption in favor of adversarial, public proceedings. The court agrees.

#### 1. Harris *and its Progeny*

In *Harris*, the Second Circuit held that an *ex parte* proceeding was not required when requested by a defendant seeking to demonstrate his eligibility for a court-appointed lawyer under the Criminal Justice Act ("CJA"). Harris submitted an affidavit attesting to his financial inability to afford counsel and, after the Magistrate Judge deemed it inadequate, Harris declined – citing his fear of self-incrimination – to provide further information unless he could do so on an *ex parte* basis. *Harris*, 707 F.2d at 654-56. The government claimed that Harris had "substantial income

4

over the preceding two years" and "might [have had] other undisclosed sources of income," and that Harris had made "material misrepresentations and misstatements" in his affidavit. *Id.* at 661. While acknowledging that there was "some support for the notion that proceedings regarding eligibility under the CJA should be conducted in camera and without government participation," the Second Circuit panel went on to hold that "such a[n] [*ex parte*] hearing was not required." *Id.* at 662.

The panel's holding was in part statutory and in part constitutional. As a matter of statutory interpretation, the court reasoned that the CJA "specifically provide[d] for ex parte applications for services other than counsel . . . while there is no such requirement for proceedings involving the appointment or termination of counsel." *Id.* Citing that textual evidence as well as the statute's legislative history, the court concluded that Congress's failure to provide for an *ex parte* proceeding indicated one was not required. *Id.* Then, addressing Harris's constitutional argument, the court observed that "our legal system is rooted in the idea that facts are best determined in adversary proceedings," and that there were "numerous situations where a defendant must face the unappealing choice . . . of testifying in open court or losing a constitutional claim." *Id.* It concluded that any "intolerable tension[s] between constitutional rights have been alleviated by applying the rule that a defendant's testimony at a pretrial hearing will not be admissible at trial." *Id.* "We believe that the speculative possibility of inadequate protection of defendant's fifth amendment rights is outweighed by the need to determine facts through adversarial proceedings." *Id.* at 663.

*Harris*'s approach is at one end of a wide circuit split on the question of CJA financial affidavits.[2] The Second Circuit, however,

---

[2] The Eighth Circuit has held, at the most defendant-protective end of the spectrum, that district courts *must* adopt *ex parte* procedures to avoid the

5

arguably reaffirmed its approach in *United States v. Bryser*, 95 F. 3d 182 (2d Cir. 1996), and a number of lower courts have applied it in its original context of CJA affidavits. *See, e.g., Hilsen*, 2004 WL 2284388, at *7-8 (denying leave to file a CJA financial affidavit *ex parte*, and collecting four other such cases). More recently, another court endorsed *Harris*'s approach in the related context of public access to judicial documents over a similar self-incrimination objection. *See Avenatti*, 2021 WL 3168145, at *10-11.

Only one decision in this circuit has directly considered *Harris*'s application to an *ex parte* submission justifying a *Monsanto* hearing. In that case, *Kolfage*, Judge Analisa Torres refused the request. 537 F. Supp. 3d at 568. Cautioning that she was "aware

---

possibility of self-incrimination. *See United States v. Anderson,* 567 F.2d 839, 840 (8th Cir. 1977). The Fourth and Ninth Circuits have impliedly preferred that practice. *See United States v. Davis*, 958 F.2d 47, 49 (4th Cir. 1992); *United States v. Ellsworth,* 547 F.2d 1096, 1098 (9th Cir. 1976), *cert. denied,* 431 U.S. 931 (1977). The Third Circuit has approved of either an *ex parte* proceeding or the guarantee of use immunity. *See United States v. Gravatt,* 868 F.2d 585, 590 (3d Cir. 1989). The Sixth and Seventh Circuits have either permitted district court discretion or provided for such discretion where it can be shown that the self-incrimination claim is not speculative. *See United States v. Krzyske,* 836 F. 2d 1013, 1018-19 (6th Cir. 1988); *United States v. Sarsoun,* 834 F.2d 1358, 1363-64 (7th Cir. 1987). The Fifth Circuit has declined to reach the issue. *See United States v. Moore,* 671 F.2d 139, 140 (5th Cir. 1982). Only the Tenth Circuit has gone further than the Second Circuit by rejecting preemptive grants of use immunity and deferring self-incrimination objections until the attempted use of such evidence at trial. *See United States v. Hardwell,* 80 F.3d 1471, 1483-84 (10th Cir. 1996). Among the remaining circuits, a variety of district courts have preferred *ex parte* submissions. *See United States v. Hilsen*, No. 03-cr-19 (RWS), 2004 WL 2284388, at *9 n.8 (S.D.N.Y. Oct. 12, 2004) (collecting cases). Judge Sweet's survey in those and other circuits, however, observed that "[e]ven in those jurisdictions where *ex parte* proceedings have been accepted . . . the propriety of such proceedings depends on whether the conflict between a defendant's Fifth and Sixth Amendment rights is deemed to be immediate and real." *Id.* at *9.

of 'no cases that provide guidance on reconciling the tension between the Fifth Amendment and the Sixth Amendment . . . where Defendant would have to produce financial data to prevail in his quest for the release of seized assets to hire counsel of his choice,'" she nonetheless concluded that the defendant's Fifth Amendment concerns were "speculative" and could be adequately protected by use immunity. *Id.* at 567-68 (quoting *United States v. Bokhari*, 185 F. Supp. 3d 254, 266 (D. Mass. 2016), *aff'd in part, modified in part*, No. 14-cr-30044 (MGM), 2016 WL 3746492 (D. Mass. July 8, 2016)).[3] Judge Torres held that the defendant's financial affidavit should be "afforded the same scope of use immunity given with respect to CJA affidavits," meaning that the government could not "be permitted to use in its direct case information contained in [it] . . . that is not otherwise available." *Kolfage*, 537 F. Supp. 3d at 568.

### 2.   Harris *and the* Bonventre *Standard*

Against this persuasive backdrop, the court nonetheless notes that these "questions . . . are surprisingly unsettled." *Avenatti*, 2021 WL 3168145, at *1. And there are strong reasons to think that *ex parte* submissions may be more appropriate in the context of *Monsanto* affidavits than CJA affidavits.

To begin with, *Harris* was substantially a statutory decision, and there is no statute at issue when it comes to *Monsanto* affidavits. Moreover, there is nothing in the *Harris* decision to suggest that

---

[3] *Bokhari* appears to be the only other case – in any circuit – that addresses a privilege against self-incrimination claim in the context of a *Monsanto* hearing. The Magistrate Judge in *Bokhari* expressly declined to address it, *see Bokhari*, 185 F. Supp. 3d at 266-267, and the District Judge reviewing that decision rejected the argument, *see Bokhari*, 2016 WL 3746492, at *4.

a district court in its discretion could not *permit* an *ex parte* submission even if it is not *required* to provide one.[4] *Ex parte* proceedings "have their place," *Ayestas v. Davis*, 138 S. Ct. 1080, 1091 (2018), even if they are disfavored, and most other circuits that have considered the question in the CJA context have held that such a place exists given the importance of the constitutional concerns presented. In the *Monsanto* context, permitting an *ex parte* submission solely to evaluate a showing under *Bonventre*, merely to consider a procedural hearing to which the Supreme Court has not held defendants entitled, does not raise the weightier concerns present in proceedings determinative of substantive rights.[5] *Cf. Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 170 (1951) (Frankfurter, J., concurring) ("[F]airness can rarely be obtained by secret, one-sided determination of facts *decisive of rights*." (emphasis added)). And the government's interest in avoiding the injury of a single proceeding is surely not as strong as avoiding the cost of providing CJA counsel to which a defendant is not in fact entitled. *But see Kaley*, 571 U.S. at 335 (2014) (hypothesizing other ways in which *Monsanto* hearings "could undermine the Government's ability to either obtain a conviction or to preserve forfeitable property").

These distinctions are especially important to observe in light of the holding in *Bonventre*, which established the test that the (contemplated) financial affidavits in this case are meant to satisfy. In doing so, the Second Circuit expressly rejected the "*Jones/Farmer*" rule adopted by other circuits. That rule requires

---

[4] Indeed, there is nothing in *Bonventre* to suggest that a district court in its discretion could not permit a *Monsanto* hearing itself even if it is not required to provide one. *Bonventre* holds that

[5] The Second Circuit held that *Monsanto* hearings may be required, *United States v. Monsanto*, 924 F.2d 1186, 1203 (2d Cir. 1991) (en banc), but the Supreme Court has expressly not addressed the question, *Kaley v. United States*, 571 U.S. 320, 324 n.3 (2014).

8

a *prima facie* showing that the disputed funds have been illegitimately restrained, in addition to a financial showing of need for the funds. *See United States v. Jones*, 160 F.3d 641, 649 (10th Cir. 1998). The panel concluded that the lower threshold – only a financial showing – was preferrable given "[t]he importance of the right at issue." *Bonventre*, 720 F.3d at 131. It emphasized that the threshold to trigger a *Monsanto* hearing should be "minimal" even as it affirmed the district court's determination that the showing had not been met in that case.[6] *Id.* at 131, 133.

These observations aside, the court agrees with the *Harris* and *Kolfage* courts that the better method for addressing the Fifth and Sixth Amendment concerns Kurland has raised is with use (and derivative use) immunity rather than *ex parte* proceedings. *See United States v. Branker*, 418 F.2d 378, 380 (2d Cir. 1969) (citing *Simmons v. United States*, 390 U.S. 377, 389-394 (1968)); *see also Kastigar v. United States*, 406 U.S. 441, 453 (1972). The solution is an imperfect one, but the court is confident that any actual risk of self-incrimination is low given the "minimal" amount of disclosure that *Bonventre* requires. An *ex parte* proceeding, by contrast, would be an ironic way of justifying a hearing that has the essential purpose of providing an adversarial check against an earlier *ex parte* restraint of funds.

---

[6] Holding that a defendant must provide "[]sufficient information for a court to evaluate the extent of his unrestrained funds," the panel provided a number of reasons why, on the facts of that case, the court could not make such an evaluation. *Id.* at 133. "Bonventre," the court said, "did not disclose his net worth, provide a comprehensive list of his assets, or explain how he has been paying his significant living expenses," and the affidavits did not "clarify whether Bonventre ha[d] access to other accounts." *Id.* As they apply to this case, those factors are illustrative; what matters is the court's ability to "evaluate the extent of [a defendant's] unrestrained funds." *Id*.

If Kurland wishes to renew his motion, he may submit a sealed affidavit accompanied by proposed redactions for the public docket. The government may submit a letter opposing Kurland's submission, if it wishes, no later than one week after Kurland's filing. The government will not be permitted to make use or derivative use of the submission in its case-in-chief. *See Hilsen*, 2004 WL 2284388, at *11.

### III. CONCLUSION

The government's request to require Kurland's affidavit to be submitted sealed, but not *ex parte,* is GRANTED.

SO ORDERED.

Dated:   Brooklyn, New York
         March 3, 2022

                                            /s/ Nicholas G. Garaufis
                                            NICHOLAS G. GARAUFIS
                                            United States District Judge