## MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION

tkasulis@maglaw.com
ddillon@maglaw.com
(212) 880-9555

SENIOR COUNSEL
PAUL R. GRAND

COUNSEL
JASMINE JUTEAU
CURTIS B. LEITNER

ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT

July 16, 2022

**By ECF**

The Hon. Nicholas G. Garaufis
United States District Judge
United States Courthouse
225 Cadman Plaza East, Room 1426 S
Brooklyn, New York 11201

      Re:    United States v. Jason Kurland,
                  20 Cr. 306 (NGG)

Dear Judge Garaufis:

      We write in connection with our intent to admit and play during the testimony of Frangesco Russo and Frank Smookler excerpts of judicially-authorized wiretaps produced by the government in discovery. These recordings will not be offered exclusively as impeachment of the witnesses, although they could also be admitted on that basis depending on the witness's testimony. Instead, the recordings have independent evidentiary value, as they are relevant to material issues in the trial and satisfy other exceptions to the rule against hearsay.

      We do not by this letter seek a ruling by the Court as to the admissibility of any particular wiretap excerpt. As described below, the government has thus far refused to indicate which excerpts it might oppose. Instead, we write at the Court's invitation to elaborate on why their admissibility should not depend on the specifics of Mr. Russo's or Mr. Smookler's testimony.

      Background

      On June 24, 2022, the government notified the defense of wiretap excerpts that it might seek to introduce at trial. We responded to the prosecutors on July 1, notifying them of the excerpts and portions of excerpts we objected to on the basis of relevance, hearsay, or the rule of completeness. The government responded to our letter via email on July 4 and subsequent correspondence on the issue resolved all (or nearly all) of those issues.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

The Hon. Nicholas G. Garaufis
July 16, 2022
Page 2

On July 1 we also notified the government of the specific wiretap sessions that the defense might wish to introduce in whole or in part at trial, including time stamps for the government's convenience. On July 5, we provided the government with the audio clips corresponding to these designated excerpts, and on July 7, provided transcripts of the excerpts of the calls. On July 9, the government sent an email asking us to share the basis for their admissibility so that if there was any disagreement we could "front it for the Court in advance so we can avoid interruptions/sidebars mid-trial." (July 9, 2022 Email from AUSA Olga Zverovich to Mr. Kasulis, attached as Exhibit A.) We responded the next morning as follows, in relevant part:

> If you have particular questions about particular excerpts, I would suggest you write them out in the manner in which we responded to your designations. I think that would prove the best way to tee up any issues. Generally speaking, if you're talking about hearsay we think several exceptions apply based on the declarations at issue including but not limited to state of mind/plan/motive, declaration against interest, present sense impressions, [and] excited utterances. And of course, some of them are not for the truth of the matter asserted inasmuch as they are lies (or instructions or threats -- things that are neither true or false).
>
> (July 10, 2022 Email from Mr. Kasulis to AUSA Olga Zverovich, attached as Exhibit B.)

The government did not respond to this email.

On Thursday, on break during the direct examination of Mr. Russo, the government informed us for the first time that it objected to our playing any wiretap excerpts during Mr. Russo's cross examination unless it was for purposes of impeachment. The government articulated its position to the Court as follows:

> We expect based on Mr. Kasulis' opening and what he told us, that he plans to impeach Mr. Russo by seeking to introduce multiple wiretap recordings that the defense has marked as Defense exhibits. In our view, the proper procedure here is to ask Mr. Russo, to the extent that the calls have relevance, did you say X, Y, and Z. If he says that he did, there is no further need to seek to introduce the recording to bolster his testimony. If he says he doesn't recall, he could be refreshed.
>
> (Transcript of July 14, 2022 at 347:13-17, attached as Exhibit C.)

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

The Hon. Nicholas G. Garaufis
July 16, 2022
Page 3

Discussion

The government is mistaken as to the basis for the admissibility of the wiretap excerpts. We do not intend to offer them to impeach Mr. Russo (although portions of them may also be admissible on that basis). If we were doing so, we agree that a process similar to the one laid out by the AUSA in Court would be appropriate.

Instead, the wiretap excerpts have independent evidentiary value beyond contradicting what Mr. Russo says on the witness stand.[1] They are authentic, relevant, and satisfy exceptions to the rule against hearsay. As such, they are admissible without regard to what Mr. Russo does or not does not say on the witness stand. Indeed, even if Mr. Russo were not to have testified the wiretap excerpts would nevertheless be admissible – demonstrating that their admissibility does not depend on his testimony.

A. The Wiretap Excerpts Are Authentic

The parties have stipulated that all wiretap excerpts introduced by either party at trial are authentic. *See* GX-2104 (in evidence).

B. The Wiretap Excerpts Are Relevant

The relevance of the wiretap excerpts will be easily established as they go directly to the central pillar of Mr. Kurland's defense.[2] The recordings demonstrate that Mr. Russo and Mr. Smookler (and occasionally Mr. Chierchio) were repeatedly lying to Mr. Kurland about a variety of issues related to the investments at issue and their theft of the alleged victims' funds – now self-professed, at least in the case of Mr. Russo – at the very time they are alleged to be Mr. Kurland's conspirators.

This evidence is therefore directly probative of a material issue in the case: the presence or absence of a conspiratorial agreement to accomplish the illicit objectives set forth in the

---

[1] We refer to Mr. Russo throughout as his testimony was the context in which this issue was first raised by the government. We understand the government's objection to apply equally to wiretap excerpts offered during Mr. Smookler's testimony, however.

[2] It is not clear if the government even disputes the relevance of the wiretap excerpts, as they declined our invitation to articulate objections on an excerpt by excerpt basis in the way the defense responded to the government's designation of their wiretaps. Nevertheless, we include a brief discussion of relevance herein so that if the government raises a relevance objection to an excerpt as it is being offered during Mr. Russo's cross examination the Court will be aware of how they are probative on the issue of the existence or absence of conspiratorial agreement.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

The Hon. Nicholas G. Garaufis
July 16, 2022
Page 4

Indictment; namely, an alleged scheme to jointly defraud Mr. Kurland's lottery winner clients and to engage in financial transactions with the proceeds of that scheme. A conspiracy, as the Court is well aware and as we anticipate it will instruct the jury in this case, is an agreement or an understanding. *See, e.g.*, Jury Charge of the Honorable Nicholas G. Garaufis in *United States v. Johnson*, 16 Cr. 457 (NGG) (E.D.N.Y.). A conspiracy is separate from the underlying substantive offense. *Iannelli v. United States*, 420 U.S. 770, 777 (1975).

The excerpts bear on whether a conspiratorial *agreement* – a meeting of the minds – existed among Mr. Russo, Mr. Smookler, and Mr. Kurland. Mr. Russo has testified that there was such a common understanding and we anticipate that Mr. Smookler will soon do the same. But the jury must be allowed to consider their efforts to deceive Mr. Kurland – to treat him not as a conspirator but as "prey," as colorfully described in one wiretap session – in considering whether an agreement existed among these individuals.

The government will, of course, be welcome to argue to the jury that other evidence – like the testimony of Messrs. Russo and Smookler – outweighs these excerpts and establishes the existence of a conspiratorial agreement beyond a reasonable doubt. But given that Federal Rule of Evidence 401 imposes a low threshold for relevance, any relevance objection to the wiretap excerpts should be overruled. *See* Rule 401 (evidence relevant if it has "*any* tendency to make a fact more or less probable than it would be without the evidence"); *see also United States v. Ray*, __ F. Supp.3d __, 2022 WL 374367, at *9 (Rule 401 imposes a "relatively low bar" for relevance) (S.D.N.Y. Feb. 8, 2022); *Boykin v. Western Express, Inc.*, 2016 WL 8710481, at *2 (S.D.N.Y. Feb. 5, 2016) (same).

    C.  The Wiretap Excerpts Are Not Excludable as Hearsay

The wiretap excerpts are not excludable hearsay. First and foremost, the wiretaps are admissible as evidence of the declarants' state of mind, pursuant to Federal Rule of Evidence 803(3). Many excerpts are also admissible because they are not being offered for the truth of the matter asserted, as would be the case with lies told by the declarant or threats, commands, or instructions (which are neither true nor false).[3]

    1.  Declarant's State of Mind

Rule 803 provides a list of enumerated hearsay exceptions, which describe declarations that are "not excluded by the rule against hearsay, regardless of whether the declarant is available

---

[3] A small number of Chierchio statements are also likely admissible as statements against interest, as he is unavailable to testify for the purposes of Federal Rule of Evidence 804. In limited circumstances, some portions of excerpts are also likely admissible as excited utterances under Rule 803(2), where the declarants were reacting to a recent significant event.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

The Hon. Nicholas G. Garaufis
July 16, 2022
Page 5

as a witness." Fed. R. Evid. 803. Rule 803(3) provides that the following statement is not excluded by the rule against hearsay:

> A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

*Id.*

Rule 803(3) is a specialized application of the present sense impression and excited utterance exceptions preceding it in Rule 803; the reasons for the state of mind exception focus on the contemporaneity of the statement and the unlikelihood of deliberate or conscious misrepresentation. *United States v. Cardascia*, 951 F.2d 474, 487 (2d Cir. 1991). Even if the statement is self-serving, it is admissible without any preliminary credibility determination by the judge, if it comes within the 803(3) exception. The self-serving nature of the statement goes only the weight to be assessed by the jury. *Id.*

The motive, intent, and plan of Messrs. Russo and Smookler are at the very center of this case (as are, obviously, the motive, intent, and plan of Mr. Kurland). The jury will be asked to decide whether Russo and Smookler were in a conspiracy with Mr. Kurland – that is, whether they were operating under a common shared understanding of concert to achieve an illegal objective. Wiretap excerpts that demonstrate that Russo and Smookler were in fact working at cross-purposes to Mr. Kurland are quintessential examples of state of mind evidence that the jury must hear in determining if the three were truly conspirators – that is, if they shared a motive, intent, and purpose.

The Second Circuit's treatment of this issue in *United States v. Schwartz* is illuminating. 924 F.2d 410 (2d Cir. 1991). In that case, a defendant charged with conspiracy sought to introduce pursuant to the state of mind exception a statement he made three months *after* the conspiracy was alleged to have concluded. *Id.* at 423-24. The Court held this was impermissible, as such after the fact statements could not "be deemed to show defendants' state of mind during the period when the conspiracy was active." *Id.* at 424. The Court was especially reluctant to sanction admission of the evidence given that "during the three-month period no acts in furtherance of the conspiracy were taken, two of the members of the conspiracy had been arrested, and the remaining two conspirators had expressed their concerns regarding government surveillance." *Id.* Here, the opposite is true on nearly all fronts. The statements in the wiretap excerpts were made during the time of the charged conspiracy, several acts in

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

The Hon. Nicholas G. Garaufis
July 16, 2022
Page 6

furtherance of the alleged conspiracy were taken after each excerpt, and no alleged conspirators had yet been arrested.

Sometimes called the *Hillmon* doctrine, based on *Mut. Life Ins. Co. of New York v. Hillmon*, 145 U.S. 285 (1892), the existence of a plan or intent to do a given act is also relevant to show that the act was thereafter done. Under a long-established exception to the hearsay rule, the existence of the plan or intent may be proved by the person's own statements to so act. The Second Circuit Court of Appeals has held on numerous occasions that a declarant's statement of intent to do an act in the future, as authorized by Rule 803(3), is admissible as evidence that the declarant thereafter acted in accordance with the stated intent. So in the wiretap excerpts when Messrs. Smookler and Russo discuss ongoing efforts to move money around to evade law enforcement, to continue to treat Mr. Kurland as a dupe, or to continue to steal Mr. Kurland's clients' money, Rule 803(3) provides a basis for admissibility. *See generally United States v. Best*, 219 F.3d 192, 198 (2d Cir. 2000) ("A declarant's out-of-court statement as to his intent to perform a certain act in the future is not excludable on hearsay grounds. If relevant, such a statement may be introduced to prove that the declarant thereafter acted in accordance with the stated intent."); *Shelden v. Barre Belt Granite Emp. Union Pension Fund*, 25 F.3d 74, 79 (2d Cir. 1994) ("It is well settled that the existence of a plan to do a given act is relevant to show that thereafter the act was in fact done."); *see also* Rutter Group Prac. Guide Fed. Civ. Trials & Ev. Ch. 8G-E ("[T]he state of mind exception is not limited to bare assertions of state of mind. Details of a conversation may be admissible to show the declarant's state of mind.").

2. Not for the Truth of the Matter Asserted

Some excerpts and portions of excerpts would also separately be admissible because they are not being offered for the truth of the matter asserted by the declarant. *See* Fed. R. Evid. 801(c)(2) (statement not hearsay if not offered "to prove the truth of the matter asserted in the statement"). Examples in this case would include when Russo or Smookler are lying to Mr. Kurland about the status of investments or what they were (or were not) doing with MCA or PPE funds. Other examples found in the excerpts include threats, commands, or instructions, which are verbal acts that cannot be true or false and so cannot be hearsay. *United States v. Bellomo,* 176 F.3d 580, 586 ("Statements offered as evidence of commands or threats or rules directed to the witness, rather than for the truth of the matter asserted therein, are not hearsay."); *United States v. Stratton*, 779 F.2d 820, 830 (2d Cir.1985) (same). Similarly, questions cannot be hearsay, so if Mr. Kurland asks a question of Russo and Russo lies to him, no part of the exchange is hearsay. *United States v. Oguns*, 921 F.2d 442, 449 (2d Cir. 1990) ("An inquiry is not an 'assertion,' and accordingly is not and cannot be a hearsay statement.").[4]

---

[4] Depending on the exact nature of the statement and the reason for which a party seeks to admit it, there is often overlap between state of mind statements and statements not offered for the truth of the matter asserted. *See e.g., United States v. Southland Corp.*, 760 F.2d 1366, 1376 (2d Cir.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

The Hon. Nicholas G. Garaufis
July 16, 2022
Page 7

D.  Sequencing

The parties' colloquy with the Court on this issue on Thursday originated with the government's objection to Mr. Kurland admitting and playing the wiretap excerpts during Mr. Russo's cross examination, save for the purpose of impeachment.  As discussed above, the excerpts have independent evidentiary value and are not admissible solely on that basis.  As such, the excerpts should be treated like any other type of evidence – if they are admissible, they can be admitted and published, and if a witness has personal knowledge of a piece of evidence he can be asked questions about it.[5]

We cannot tell if the government is making a separate point: that, regardless of whether the wiretap excerpts are independently admissible, they must await the beginning of the defense case to be admitted.  If they are, the Court should decline this invitation.  The defense would then need to *recall* Messrs. Russo and Smookler during the defense case to ask them about the recently-admitted and published wiretaps.  The Court has the inherent authority over the structure of the trial proceedings to avoid inefficiencies and wastes of the jury's time.  Rather than bifurcating defense examinations of Russo and Smookler into multiple phases of the trial, the Court should permit the offering and publication of the wiretap excerpts during cross examination to ensure the orderly and efficient presentation of evidence.

Conclusion

The Court should permit the defense to offer and publish wiretap excerpts during the cross examinations of Messrs. Russo and Smookler for reasons other than for impeachment.  The

---

1985) ("When a declaration is admitted only to prove a relevant state of mind, it does not appear to matter … whether admissibility is predicated on the declaration not being hearsay because it was not offered to prove the truth of the matter asserted, FRE 801(c), or under the hearsay exception for declaration of states of mind, FRE 803(3). Under either theory, '[a] state of mind can be proved circumstantially by statements … which are not intended to assert the truth of the fact being proved.'").

[5] This is essentially what the government did for a significant portion of its direct examination of Mr. Russo.  They admitted a piece of evidence – a ledger or a text chain or a wiretap excerpt – published it to the jury, then asked the witnesses follow-up questions about it.  At the risk of stating the obvious, none of this (permissible) activity depended upon impeachment rules.  Instead, evidence with an independent basis for admission was admitted, published, and examination of the witness continued.  This is precisely what we ask to do, as well.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

The Hon. Nicholas G. Garaufis
July 16, 2022
Page 8

wiretaps are independently admissible and this approach will allow for the effective and efficient presentation of the evidence at trial.

         Respectfully submitted,

         /s/ Telemachus P. Kasulis
         Telemachus P. Kasulis
         A. Dennis Dillon

         *Counsel to Jason Kurland*

cc: Counsel of record