UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| UNITED STATES OF AMERICA, | MEMORANDUM & ORDER |
|---|---|
| -against- | 20-CR-306 (NGG) |
| JASON KURLAND, | |
| Defendant, | |
| LAUREN KURLAND, | |
| Third Party Petitioner. | |

NICHOLAS G. GARAUFIS, United States District Judge.

In July 2022, a jury convicted Defendant Jason Kurland (the "Defendant") of several counts arising out of his scheme to abuse his position as a lawyer and defraud his clients of tens of millions of dollars in lottery winnings. (Verdict Sheet (Dkt. 246) at 1-3; Presentence Investigation Report ("PSR") (Dkt. 275) ¶ 12.) After sentencing, the court ordered the Defendant to forfeit $64,600,000.00. (Order of Forfeiture (Dkt. 317-1) at 1.) The Government has been unable to locate or obtain the proceeds of the offenses and thus seeks to forfeit the Defendant's interest in his home as a "substitute asset" pursuant to 21 U.S.C. § 853(p). Petitioner Lauren Kurland, who is married to the Defendant, brought two third-party petitions pursuant to 21 U.S.C. § 853(n) to adjudicate her interest in the home. The Government moves to dismiss Ms. Kurland's Petitions. For the reasons set forth below, the Government's motion to dismiss Ms. Kurland's First and Second Third-Party Petitions is GRANTED, and the Government is DIRECTED to submit a proposed Amended Preliminary Order of Forfeiture as to Substitute Assets by April 18, 2025.

1

## I. BACKGROUND[1]

The court assumes familiarity with the facts and history of this case. As described in the operative Superseding Indictment, co-defendants Christopher Chierchio, Jason Kurland, Francesco Russo, and Francis Smookler defrauded various lottery winners of their winnings by steering them into sham investments or out-right stealing their winnings for themselves, and then covered up the thefts by laundering the proceeds. (*See generally* Superseding Indictment (Dkt. 170).) All four Defendants were prosecuted and convicted for their roles in the scheme. (*See* Judgment (Dkt. 317); Chierchio Judgment (Dkt. 311); Russo Judgment (Dkt. 349); Smookler Judgment (Dkt. 366).) As to Smookler and Russo, the court entered Preliminary Orders of Forfeiture which provided that they forfeited all right, title, and interest in certain property, including the real property located at 20 Peppermill Lane, Dix Hills, New York, 11746. (Smookler Preliminary Order of Forfeiture (Dkt. 81); Russo Preliminary Order of Forfeiture (Dkt. 186).) Those orders did not apply to Defendant Kurland.

On July 26, 2022, a jury convicted the Defendant of five counts in a seven-count Superseding Indictment, including: wire fraud conspiracy, wire fraud, honest services wire fraud, conspiracy to engage in unlawful monetary transactions, and unlawful monetary transactions. (Superseding Indictment at 1-5; Verdict Sheet at 1-3.) On June 15, 2023, the court sentenced the Defendant to 156 months' imprisonment and 3 years' supervised release. (Judgment at 3-4; Min. Entry Dated 6/15/2023.) The court also entered a separate Order of Forfeiture, ordering the Defendant to forfeit $64,600,000.00. (Order of Forfeiture at 1.) The Order of Forfeiture provided: "[i]f the defendant fails to pay any portion

---

[1] Unless otherwise noted, the following facts are undisputed and, for purposes of this third-party claim to criminal forfeiture, assumed to be true. Fed. R. Crim. P. 32.2(c)(1)(A) ("For purposes of the motion, the facts set forth in the petition are assumed to be true.").

of the Forfeiture Money Judgment on or before the Due Date"—
here, the date of sentencing—"the defendant shall forfeit any
other property of his up to the value of the outstanding balance
of the Forfeiture Money Judgment." (*Id.* at 2.) As of December
2024, approximately $51,172,396.70 of the money judgment re-
mained unpaid. (Preliminary Order of Forfeiture as to Substitute
Assets (Dkt. 424) at 2.)

On September 16, 2024, Lauren Kurland filed her First Third-
Party Claim to Criminal Forfeiture (the "First Claim"), requesting
an ancillary proceeding pursuant to 21 U.S.C. § 853(n) to adju-
dicate her interest in 20 Peppermill Lane, Dix Hills, New York,
11746 (the "Property"). (First Third-Party Claim (Dkt. 387) ¶ 1.)
The Property is the Defendant and Ms. Kurland's home, which
they purchased in 2013 as tenants in the entirety and where they
lived—and Ms. Kurland still lives—with their three children and
Ms. Kurland's father. (*Id.* ¶¶ 4-6.) According to Ms. Kurland, she
received the Preliminary Orders of Forfeiture pertaining to
Smookler and Russo, which provided that they forfeited all right,
title, and interest in the Property, but she "never received a Pre-
liminary Order of Forfeiture captioned United States of America
against Jason Kurland."[2] (*Id.* ¶ 2.) Ms. Kurland objects to the for-
feiture of the Property on several grounds, including that the
Property does not constitute "criminal proceeds," and that she,
an innocent spouse, maintains a right to her interest in the Prop-
erty. (*Id.* ¶¶ 7-21.)

The Government responded to Ms. Kurland's claim on November
22, 2024, stating:

---

[2] The court entered Final Orders of Forfeiture with respect to Smookler,
Russo, and Chierchio on September 25 and October 1, 2024; however,
those Final Orders did not include the Property, as it remained subject to
Ms. Kurland's outstanding third-party claim. (Smookler Final Order of For-
feiture (Dkt. 390); Russo Final Order of Forfeiture (Dkt. 397); Chierchio
Final Order of Forfeiture (Dkt. 398).)

Upon further consideration and following discussions with Ms. Kurland, the Government will not oppose Ms. Kurland's Petition. However, because the Government is unable to locate the proceeds of the defendant's offenses to satisfy the Money Judgment, the Government will seek to forfeit the defendant's interest in the Property as a substitute asset pursuant to 21 U.S.C. § 853(p).

(Gov't Response to First Claim (Dkt. 410) at 1.) Thereafter, on December 6, 2024, the Government filed a motion seeking a Preliminary Order of Forfeiture as to Substitute Assets with respect to the Property. (Gov't Mot. for Preliminary Order of Forfeiture as to Substitute Assets (Dkt. 422).) The Government represented that it had been unable to locate or collect assets traceable to the proceeds of the Defendant's offenses to satisfy the outstanding Order of Forfeiture. (*Id.* ¶ 12.) As a result, the Government moved pursuant to 21 U.S.C. § 853(p) to forfeit the Defendant's right, title, and interest in the Property. (*Id.* ¶¶ 14-17.) In particular, the Government requested that "the Defendant's interest in the [Property] be forfeited to the United States, and in the event that the [Property] is sold or transferred, the Defendant's interest in the [Property] be applied as a payment toward the Money Judgment." (*Id.* ¶ 14.)

On December 9, 2024, the court granted the Government's motion and entered a Preliminary Order of Forfeiture as to Substitute Assets with respect to the Property (the "Preliminary Substitute Assets Order"). (Preliminary Order (Dkt. 424).) The Preliminary Substitute Assets Order provides, among other things, that "[a]ll of the Defendant's right, title and interest in the [Property] is hereby forfeited to the United States of America, for disposition in accordance with the law, subject to the provisions of Title 21, United States Code, Section 853(n)." (*Id.* at ¶ 1.)

Subsequently, on January 3, 2025, Ms. Kurland filed her Second Third-Party Claim to Criminal Forfeiture (the "Second Claim"),

again requesting an ancillary proceeding pursuant to 21 U.S.C. § 853(n)(2) to adjudicate her interest the Property. (Second Third-Party Claim (Dkt. 426) ¶¶ 1-4.) Ms. Kurland reiterates her assertion from her First Claim that her legal right, title, and interest in the Property as a tenant by the entirety "render[s] the designation and order of a substitute asset invalid." (*Id.* ¶ 22.) As such, "[i]f the Court grants the government's request and designates my home as a substitute asset, that would cause me to forfeit a right that I possess and that has invested in me; rather than the defendant, and the law does not permit that." (*Id.*) Thus, Ms. Kurland requests that the court "deny the Order of Forfeiture as to Substitute Assets that was filed." (*Id.* ¶ 6.)

Before the Government could respond to Ms. Kurland's Second Claim, Ridgewood Savings Bank ("Ridgewood") submitted a letter asserting its interest in the Property as a mortgagee. (Bank Letter (Dkt. 428).) Ridgewood requested, and the court granted, an extension of time for it to respond to the Preliminary Substitute Assets Order. (*Id.*; Order Dated 1/6/2025.)

In the meantime, the Government responded to Ms. Kurland's Second Claim on January 21, 2025. (Gov't Response to Second Claim (Dkt. 430).) The Government clarified that the Preliminary Substitute Assets Order seeks to forfeit only "the *defendant's interest* in the Property—not [Ms. Kurland's]—and the Government is not seeking to force a sale of the Property." (*Id.* at 1 (emphasis added).) The Government recognized that the Defendant and Ms. Kurland own the Property as tenants by the entirety, but explained that, as long as the Defendant holds an interest in the Property, that interest is subject to forfeiture under 21 U.S.C. ¶ 853(p). (*Id.*) The Government summarized its understanding as follows:

> Thus, even though the defendant's interest in the Property has been forfeited to the Government, Petitioner's interest has not been forfeited and remains intact. As a result, upon

entry of a Final Order of Forfeiture, the Petitioner and the Government will each own an undivided half-interest in the Property as tenants-in-common, with the Government's right of survivorship tied to Mrs. Kurland's life and Mrs. Kurland's right of survivorship tied to the defendant's life. In this way, the forfeiture order will allow the Government to sell the property—and apply the proceeds toward the Money Judgment—should Petitioner ever sell the Property or predecease the defendant.

(*Id.* at 2.) Put simply, the Government will take the place of the Defendant in the estate, but because a tenancy by the entirety exists only between married persons, the estate will convert to a tenancy in common. (*See id.*) Moreover, because the Government cannot alter Ms. Kurland's rights with respect to the estate, her right of survivorship will remain tied to the Defendant's life. (*Id.*) Such an arrangement would leave Ms. Kurland's interest in the Property intact. (*See id.* (citing two cases adopting a similar approach: *United States v. Stern*, No. 16-CR-525 (JGK), 2021 WL 3474040 (S.D.N.Y. Aug. 5, 2021), and *United States v. Kogan,* No. 16 CR. 221 (KPF), 2022 WL 3362452 (S.D.N.Y. Aug. 15, 2022)).)

The Government also addressed Ridgewood's letter, stating that it "has been in correspondence with [entities that hold liens on the Property] and advised of their interests," and that it intends "to enter into Stipulations with those entities providing for the satisfaction of those liens should the Property ever be sold by the Government." (*Id.* at 2 n.1.) Thereafter, the Government will "move for entry of a Final Order of Forfeiture with respect to the defendant's right, title, and interest in the Property consistent with 21 U.S.C. § 853." (*Id.*)

On February 12, 2025, rather than file a formal third-party petition, Ridgewood and the Government submitted a joint

stipulation and proposed order (the "Stipulation") which pur-
ports to set forth their rights and obligations with respect to the
Property. (Stipulation & Proposed Order (Dkt. 431).) The Stipu-
lation explains that, on or about July 26, 2013, the Defendant
and Ms. Kurland executed a $900,000 note to Ridgewood and
executed a mortgage in favor of Ridgewood against the Property.
(*Id.* at 1.) According to the Stipulation, "as of January 31, 2025,
the current total amount of principal, interest, remaining on the
Note is approximately $846,859.69." (*Id.* at 2.) Ridgewood and
the Government then stipulate:

> 1. The United States of America hereby recognizes that
> Ridgewood, and its successors and assigns, have a valid lien
> and legal right, title and interest in the Substitute Asset, and
> such right, title, and interest is superior to the interest, if any,
> of the Government in the Substitute Asset.

> 2. Until the entry of an Order resolving the Government's in-
> terest in the Substitute Asset, Ridgewood shall not take any
> action to foreclose upon the Note and Mortgage without
> prior approval from the Government.

> 3. Upon the sale of the Substitute Asset, pursuant either to a
> Final Order of Forfeiture in this criminal matter forfeiting all
> right, title and interest in the Substitute Asset to the United
> States, or pursuant to an interlocutory sale order in this crim-
> inal matter, the United States acknowledges the lien rights
> of Ridgewood and its successors and assigns, and agrees to
> satisfy, from the proceeds of the sale of the Substitute Asset,
> the Note and applicable interest charges and late charges on
> the same accrued prior to the sale of the Substitute Asset, to
> the extent that there are sufficient proceeds, after satisfying
> any outstanding property taxes and the deduction of govern-
> ment expenses relating to seizure, maintenance, custody,
> and disposal of the Substitute Asset.

4. In furtherance of such a sale, the Parties agree to execute promptly any documents which may be required to convey clear title to the property and complete the sale of the Substitute Asset.

5. Upon entry of this Stipulation and Order, Ridgewood shall not contest the forfeiture of the Substitute Asset.

6. This Stipulation and Order constitutes the complete agreement between the parties hereto on the matters contained herein, and no other statement, promise or agreement, either written or oral, made by either party or agents of either party, that is not contained in this written Agreement shall be enforceable. Any modifications to this agreement shall be in a writing signed by the parties.

7. The parties hereby waive all rights to appeal or to otherwise challenge or contest the validity of this Stipulation and Order.

8. Each party to this Stipulation and Order shall bear its own costs and attorney's fees. No attorney's fees associated with this settlement shall be authorized.

9. The Court shall have exclusive jurisdiction over the interpretation and enforcement of this Stipulation and Order.

(*Id.* at 2-3.) The Stipulation is signed by the Government, a representative of Ridgewood, and Ridgewood's attorney. (*Id.* at 4.) The document also provides a space for the court to so-order the Stipulation. (*Id.*)

Pending before the court are Ms. Kurland's First and Second Third-Party Petitions, the Government's motion to dismiss Ms. Kurland's Petitions, and the Government and Ridgewood's Stipulation, which they apparently wish the court to so-order. (*See generally* First Third-Party Claim; Second Third-Party Claim; Gov't Response to Second Claim ("[T]he [Third-Party] Petition

should be dismissed to the extent it objects to the forfeiture of [Defendant's] interest in the Property."); Stipulation & Proposed Order.) For the reasons that follow, the Government's motion to dismiss is granted, and the court declines to so-order the Stipulation.

## II. APPLICABLE LAW

### A. Criminal Forfeiture: Federal Law

Upon conviction for an offense regarding which criminal forfeiture is sought, a district court "must determine what property is subject to forfeiture under the applicable statute" and "promptly enter a preliminary order of forfeiture." Fed. R. Crim. P. 32.2(b)(1)(A) and (b)(2)(A); 18 U.S.C. § 982. The forfeiture of property under Section 982, including "any related judicial or administrative proceeding," is governed principally by 21 U.S.C. § 853. 18 U.S.C. § 982(b)(1). Federal Rule of Criminal Procedure 32.2 sets forth additional procedural rules applicable to forfeiture proceedings.

Section 853 defines "property" as "real property, including things growing on, affixed to, and found in land," as well as "tangible and intangible personal property, including rights, privileges, interests, claims, and securities." 21 U.S.C. § 853(b)(1)-(2). Two categories of property are subject to forfeiture under Section 853. The first category, sometimes referred to as "tainted property," *United States v. Wolf*, 375 F. Supp. 3d 428, 435 (S.D.N.Y. 2019), includes, among other things, "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of [the] violation," and "any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation." § 853(a). The second category, referred to as substitute property, is "any other property of the defendant." § 853 (p)(2).

The Government may seek forfeiture of substitute property if, due to any act or omission of the defendant, the tainted property:

> (A) cannot be located upon the exercise of due diligence;
>
> (B) has been transferred or sold to, or deposited with, a third party;
>
> (C) has been placed beyond the jurisdiction of the court;
>
> (D) has been substantially diminished in value; or
>
> (E) has been commingled with other property which cannot be divided without difficulty.

§ 853 (p)(1). Whether the property is tainted or substitute, the Government may only seize an interest belonging to the defendant. *United States v. Daugerdas*, 892 F.3d 545, 553 (2d Cir. 2018); *Kogan*, 2022 WL 3362452, at *5 ("[A] defendant's consent to forfeit property does not expand the Court's power over that property, if the property is not the defendant's own, since one only has the power to convey or forfeit property to which he holds title.").[3]

Section 853 and Rule 32.2 create a two-step procedural framework for completing a criminal forfeiture. "At stage one, before entering a preliminary order of forfeiture, the court adjudicates the government's interest vis-à-vis the defendant without regard to any third party's interest in the property." *Wolf*, 375 F. Supp. 3d at 435 (citing *United States v. Daugerdas,* 892 F.3d 545, 549 (2d Cir. 2018)). "At stage two, before entering a final order of forfeiture, the court resolves any third-party petitioner's interests vis-à-vis the defendant." *Id.* (citing *Daugerdas*, 892 F.3d at 549). The proceeding before this court is in stage two.

---

[3] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

At stage two, a third party may petition the court for an ancillary proceeding to "adjudicate the validity of [her] alleged interest in the property." § 853(n)(2). The petitioning third party "must establish a 'legal interest' in [the] forfeited property, as determined by state law." *United States v. Stern*, No. 16-CR-221 (KPF), 2021 WL 3474040, at *2 (S.D.N.Y. Aug. 5, 2021) (citing *United States v. Watts*, 786 F.3d 152, 161 (2d Cir. 2015); *Pacheco*, 393 F.3d at 353-56). If the court finds that the petitioner has proven, by a preponderance of the evidence, that (A) a legal "right, title, or interest in the property was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts," or (B) the petitioner is "a bona fide purchaser for value of the right, title, or interest in the property," the court "shall amend the order of forfeiture" in accordance with such an interest. § 853(n)(6); Fed. R. Crim. P. 32.2(c)(2).

Ancillary proceedings "closely resemble[] a civil action." *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004). As such, "the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason." Fed. R. Crim. P. 32.2(c)(1)(A). A motion to dismiss a third-party petition "is evaluated on the same standard as a civil complaint on a motion under Rule 12(b)(6)." *Daugerdas*, 892 F.3d at 552. Accordingly, to survive a motion to dismiss, "the petition need only state enough facts to state a claim to relief that is plausible on its face." *United States v. Watts*, 786 F.3d 152, 161 (2d Cir. 2015). While the court accepts as true all factual allegations in the petition, Fed. R. Crim. P. 32.2(c)(1)(A), "[it] need not do the same for legal conclusions," *Daugerdas*, 892 F.3d at 552.

### B.  Property Rights: New York Law

"State law determines a [third party] petitioner's legal interest in the property at issue." *Willis Management (Vermont), Ltd. v. United States*, 652 F.3d 236, 242 (2d Cir. 2011). Accordingly, to

determine Ms. Kurland's interest in her home, the court will apply the law of the state where the Property is located: New York.

Under New York law, "[a] disposition of real property to a husband and wife creates in them a tenancy by the entirety, unless expressly declared to be a joint tenancy or a tenancy in common." N.Y. E.P.T.L. § 6-2.2(b); *see also Goldman v. Goldman*, 95 N.Y.2d 120, 122 (N.Y. 2000) ("A tenancy by the entirety is a form of real property ownership available only to parties married at the time of the conveyance."). A tenancy by the entirety "confers on the surviving spouse a right to absolute ownership of the property upon the other spouse's death." *Ciaccio v. Wright-Ciaccio*, 211 A.D.3d 900, 902 (2d Dep't 2022). Additionally, each spouse "may sell, mortgage or otherwise encumber his or her rights in the property, subject to the continuing rights of the other." *Goldman*, 95 N.Y.2d at 122; *see also V.R.W., Inc. v. Klein*, 68 N.Y.2d 560, 565 (N.Y. 1986) ("[T]here is nothing in New York law that prevents one of the co-owners from mortgaging or making an effective conveyance of his or her own interest in the tenancy [by the entirety]," however, "the interest acquired by [the grantee] of such a unilateral conveyance is not denominated a tenancy by the entirety, but rather is labeled a tenancy in common."). A tenancy in common is "similar to a tenancy by the entirety in that it gives each co-tenant an equal right to possess the whole property, but, notably, it grants no right of survivorship to either co-tenant." *Kogan*, 2022 WL 3362452, at *4.

## III. DISCUSSION

### A. The Third-Party Claim to Criminal Forfeiture

The Government seeks forfeiture of Defendant's interest in the Property as a substitute asset pursuant to 21 U.S.C. § 853(p). The Government asserts that forfeiture of Defendant's interest in the property would terminate the tenancy by the entirety between the Defendant and Ms. Kurland, leaving the Government and Ms.

Kurland as tenants in common. (Gov't Response to Second Claim at 2.) However, unlike a traditional tenancy in common, Ms. Kurland would maintain her right of survivorship tied to the Defendant's life, and the Government would assume the Defendant's right of survivorship tied to Ms. Kurland's life. (*Id.*) Such an arrangement would, according to the Government, leave Ms. Kurland's interest in the Property "intact." (*Id.*) The Government cites two cases out of the Southern District of New York, *Stern* and *Kogan*, in support of its proposed approach. (*Id.*)

Ms. Kurland argues that she possesses an interest in the *entirety* of the Property as a tenant by the entirety, and, as such, the Defendant's interest in the Property cannot be forfeited.[4] (Second Third-Party Claim ¶ 29 ("I have a 100 percent interest in the home as a tenancy by the entirety.").) She notes that "[a] [t]enancy by the entirety can be broken only by death, divorce or by the sale of the property on the consent of both parties," and "[n]one of this is the case here." (*Id.*) Ms. Kurland further asserts that "[t]he provisions of forfeiture law were never meant to restrict the property interests of an innocent owner," citing *United States v. Certain Real Property at 2525 Leroy Lane*, 910 F.2d 343 (6th Cir. 1990), *Wolf*, 375 F. Supp. 3d 428, and *United States v. Lee*, 232 F.3d 556 (7th Cir. 2000) in support of that proposition. (Second Third-Party Claim ¶¶ 27-30.) Finally, Ms. Kurland contends that the Government "has already claimed assets traceable to the proceeds of the offense . . . that would satisfy in part some of the forfeiture[,] including essentially all our savings and retirement accounts," and "the deeming of [her] home as a

---

[4] Although it is not entirely clear from her submission, because Ms. Kurland is proceeding *pro se*, the court construes her Second Third-Party Claim liberally to argue that she opposes not only forfeiture of the Property in general, but also forfeiture of Defendant's interest in the property. *United States v. Starling*, 76 F.4th 92, 99 (2d Cir. 2023) ("District courts are . . . directed to read pro se papers liberally."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (same).

substitute asset will cause [her] to lose [her] rights and cause extreme hardship for [her] and [her] family." (*Id.* ¶¶ 23-24.)

The court concludes that Ms. Kurland has not plausibly alleged that she has a legal right, title, or interest in *the Defendant's interest* in the Property. As such, the Government's proposed manner of forfeiture is appropriate, and its motion to dismiss Ms. Kurland's Petitions is granted, with the direction that the Government amend the Preliminary Order of Forfeiture as to Substitute Assets to reflect Ms. Kurland's and the Government's respective interests in the Property.

Two cases from the Southern District of New York drive the court's decision: *United States v. Stern* and *United States v. Kogan*. *See generally Stern*, 2021 WL 3474040; *Kogan*, 2022 WL 3362452. *Stern* involved circumstances similar to this case: a defendant-husband and wife (Ms. Stern) owned their home as tenants by the entirety, and, following the defendant's conviction for money laundering, the Government moved to forfeit the defendant's interest in the home pursuant to § 853(p). *Stern*, 2021 WL 3474040, at *1-2. Ms. Stern asserted a third-party interest in the home, and the Government moved for judgment on the pleadings. *Id.* at *3. While the court ultimately denied the Government's motion, Judge Koeltl approved the forfeiture of the defendant's interest in the home to the extent it left Ms. Stern's interest intact. *Id.* at *4-5. Judge Koeltl likened the forfeiture to a voluntary conveyance of the defendant's interest in the home to the Government. *Id.* at *5. Under that interpretation, the defendant necessarily severed his tenancy by the entirety by transferring his interest to the Government, effectively creating a tenancy in common. *Id.* However, while the defendant could transfer *his* interest to the Government, he could not unilaterally destroy Ms. Stern's right of survivorship. *Id.* at *4-5 ("The Government cannot take, and Mr. Stern cannot forfeit, an interest that does not belong to Mr. Stern."); *see also V.R.W., Inc.*, 68

N.Y.2d at 564 ("It is well established that a conveyance by one tenant, to which the other has not consented, cannot bind the entire fee or impair the nonconsenting spouse's survivorship interest."). Accordingly, Judge Koeltl concluded that "the Government's forfeiture of Mr. Stern's interest in the subject property functions similarly to a voluntary conveyance by Mr. Stern, in which the grantee"—the Government—"and Ms. Stern each own an undivided half interest in the Subject Property as tenants in common, but with the Government owning a survivorship right tied to Ms. Stern's life and Ms. Stern owning a survivorship right tied to Mr. Stern's life." *Stern*, 2021 WL 3474040, at *5.

Judge Failla adopted the same approach in *Kogan*. There, two married couples owned their respective homes as tenants by the entirety, and, following the defendant-husbands' convictions for healthcare fraud, the Government moved to forfeit the defendants' interests in their homes pursuant to § 853(p). *Kogan*, 2022 WL 3362452, at *1. The wives, Ms. Kogan and Ms. Abdrabo, asserted a third-party interest in their respective homes, and the Government moved for judgment on the pleadings. *Id.* As in *Stern*, while the court ultimately denied the Government's motion, Judge Failla approved of the forfeiture of the defendants' interest in their homes to the extent it left Ms. Kogan and Ms. Abdrabo's interests intact. *Id.* at *5-8. Specifically, Judge Failla adopted Judge Koeltl's approach from *Stern* and concluded that the Government's proposed manner of forfeiture would preserve Ms. Kogan and Ms. Abdrabo's interests: "Both the Government and Petitioners would still possess rights of survivorship, and the joint estate they share would [] be a tenancy in common rather than a tenancy by the entirety." *Id.* at *8. Accordingly, Judge Failla denied the Government's motion and instructed it to amend the preliminary orders of forfeiture "to (i) reflect that the Government and each Petitioner hold title to the Substitute Assets as co-tenants sharing a tenancy in common; and (ii) include

references to the Government's right of survivorship tied to Petitioners' lives, and Petitioners' rights of survivorship tied to Defendants' lives." *Id.*

As noted by Judge Failla in *Kogan*, Judge's Koeltl's approach "harmonizes two legal principles that are central to the dispute at hand." *Id.* at *7. First, "conceptualiz[ing] the Government and [Petitioner] as tenants in common gives legal effect to the precept that tenancies by the entirety cannot be held by unmarried parties." *Id.* Second, "Judge Koeltl's resolution upholds the equally important principle that a person cannot convey, alter, or extinguish property interests that do not belong to him"—a principle which figures prominently in Ms. Kurland's Petitions. *Id. Stern* therefore "balances the positions of the Government and the spouse in a manner that honors the fundamental characteristics of a tenancy by the entirety, while respecting the principle that only criminal wrongdoers should be subjected to punishment by the Government." *Id.*

The court adopts the well-supported approaches of Judge Koeltl and Judge Failla. Ms. Kurland is correct that the Government cannot forfeit her right in the Property, which includes her right of survivorship. *See Stern*, 2021 WL 3474040, at *4 ("The Government cannot take, and Mr. Stern cannot forfeit, an interest that does not belong to Mr. Stern."). As such, the Government's forfeiture of Defendant's interest in the Property must function like a voluntary conveyance by Defendant, "in which the grantee—in this case the Government—and [Ms. Kurland] each own an undivided half interest in the [Property] as tenants in common, but with the Government owning a survivorship right tied to [Ms. Kurland's] life and [Ms. Kurland] owning a survivorship right tied to [Defendant's] life." *Id.* at *5. Thus, to the extent the Preliminary Order of Forfeiture as to Substitute Assets leaves any doubt as to Ms. Kurland's rights, the Order must be amended to (1) reflect that the Government and Ms. Kurland hold title to

the Property as co-tenants sharing a tenancy in common; and (2) include reference to the Government's right of survivorship tied to Ms. Kurland's life, and Ms. Kurland's right of survivorship tied to the Defendant's life. *See id.* (ordering the Government to submit an amended order of forfeiture along these lines); *Kogan,* 2022 WL 3362452, at *8 (same). The court is satisfied that this arrangement "balances the positions of the Government and [Ms. Kurland] in a manner that honors the fundamental characteristics of a tenancy by the entirety, while respecting the principle that only criminal wrongdoers should be subjected to punishment by the Government." *Kogan,* 2022 WL 3362452, at *7.

The cases relied upon by Ms. Kurland support, rather than undermine, the court's approach. For example, in *United States v. Certain Real Property at 2525 Leroy Lane,* the Sixth Circuit concluded that certain relation back provisions in the United States Code—vesting the title of forfeitable property in the United States *upon the commission of the illegal act*—do not convert a tenancy by the entirety held by the defendant-husband and petitioner into a tenancy in common, such that the Government can deprive the innocent petitioner of her interest in the property. 910 F.2d at 350. The court explained:

> While the federal forfeiture scheme permits the Government to assume [the defendant's] interest in the property, it may not by virtue of the forfeiture alter the essential characteristics of the entireties estate. To sever the entireties estate in favor of a tenancy in common among [petitioner] and the Government would . . . vest the Government with a greater interest than that held by the individual wrongdoer whose interests the Government has acquired, and would not adequately compensate [petitioner] for her survivorship interest.

*Id.*; *see also id.* at 349 ("[F]orfeiture statutes are intended to impose a penalty only upon those who are significantly involved in

a criminal enterprise."). (*See* Second Third-Party Claim ¶ 27 (discussing *Certain Real Property at 2525 Leroy Lane*); First Third-Party Claim ¶ 23 (same).) The court's approach aligns with these principles. While the transfer of Defendant's interest in the Property to the Government necessarily destroys the tenancy by the entirety, Ms. Kurland's interest remains intact: she will hold title to the Property as a co-tenant and will maintain a right of survivorship tied to the Defendant's life. The Government will take no "greater interest than that held by the individual wrongdoer," and Ms. Kurland will be "adequately compensate[d] . . . for her survivorship interest." *Certain Real Property at 2525 Leroy Lane*, 910 F.2d at 350. Put simply, the concerns voiced in *Certain Real Property at 2525 Leroy Lane* are not implicated by the court's method of forfeiture.

Likewise, in *United States v. Wolf*, the court denied the Government's motion to dismiss a petitioner's challenge to a preliminary forfeiture order, which required the defendant to forfeit "his fifty (50) percent interest in the value" of two properties held by the couple as tenants by the entirety. 375 F. Supp. 3d at 433, 440-41. In assessing the 50 percent division, the court questioned whether "a spouse's interest in a tenancy by the entirety . . . with a right of survivorship is, as a matter of law, fifty percent of the property's value." *Id.* at 438. At the same time, the court rejected the idea that the criminal forfeiture statutes provide for an "innocent owner exception" to forfeiture, explaining that such an exception "would be superfluous, because criminal forfeiture under § 853 reaches only the property of the criminal defendant, and therefore there are no circumstances in which the property of an innocent owner is lawfully forfeited." *Id.* at 440. In any event, because it was "plausible that [Petitioner's] rights in the Properties entitle[d] her to retain a greater share of the Properties' value than" 50 percent, the court denied the Government's motion to dismiss the third-party petition. *Id.* at 439, 440-41.

Putting aside the fact that *Wolf* dealt with the application of North Carolina and Arizona law, rather than New York law, the principles articulated in that case are in harmony with the court's approach. The court's method of forfeiture recognizes that Ms. Kurland and the Defendant's respective interests in the Property are not as simple as a 50/50 split. Rather, protecting Ms. Kurland's tenancy as a person who has committed no wrongdoing requires the maintenance of both her interest in the Property and her right of survivorship tied to the Defendant's life. Thus, the concerns articulated in *Wolf* are allayed by the court's chosen method of forfeiture. (*See* Second Third-Party Claim ¶ 28 (discussing *Wolf*); First Third-Party Claim ¶ 24 (same).)

Finally, in *United States v. Lee*, the Seventh Circuit confronted circumstances similar to this case: a defendant-husband and wife (Ms. Lee) owned their home in Florida as tenants by the entirety, and, following the defendant's conviction for fraud-related offenses, the Government executed a forfeiture judgment against the defendant by taking the home. 232 F.3d at 558. Ms. Lee filed a third-party petition, claiming that the defendant had no forfeitable interest in the home because the couple owned it as tenants by the entirety. *Id.* at 560. The United States District Court for the Central District of Illinois granted the Government's motion to dismiss Ms. Lee's petition on the ground that "the government would, in effect, be substituted for [defendant] in the ownership of the home—in other words, the government would become [Ms. Lee's] co-tenant by the entirety [and] [Ms. Lee] would thus retain her right of survivorship." *Id.* The Seventh Circuit reversed on the ground that "Florida law clearly prohibits the forfeiture of [defendant's] interest in the family home without [Ms. Lee's] consent," and there "is no warrant for ignoring the nature of the property right created by the state law . . . in a substitute asset case," *i.e.*, in a case where the property at issue does not constitute criminal proceeds and was not used in connection with the

illegal activity. *Id.* at 561. The court also explored the complications that would arise in treating the Government and Ms. Lee as cotenants by the entirety:

> The government would be [Ms. Lee's] co-tenant in a form of property ownership which requires both parties to participate in nearly every decision concerning the property. No mortgage would be possible without the signature of both tenants . . . . [Ms. Lee] would need the government's approval to sell the property or to transfer the estate into a tenancy in common. Though she would be fully liable for taxes and other costs of homeownership in any tenancy by the entirety, in a normal tenancy by the entirety there would be a chance that her husband, also fully liable for the property, would contribute to those expenses. Because the government (as it admitted at oral argument) would not be there with its checkbook, she could do little more than sit by and hope that the estate would not fall into disrepair.

*Id.* at 561-62. Thus, the court concluded that "the attributes of tenancy by the entirety recognized by Florida law [] should not have been overridden by the district court, and the house should have been considered unavailable for a substitute asset order." *Id.* at 562. The court noted, however, "that if the tenancy by the entirety is ever split in accordance with Florida law, [the defendant and Ms. Lee's] interests would then become distinct and separable so that a later forfeiture of [the defendant's] interest in the property would not affect [Ms. Lee's] rights." *Id.*

*Lee* is distinguishable from the instant case because it involved the application of Florida law, which differs in significant respects from New York law on this subject. While Florida law prohibits the forfeiture of a defendant's interest in a tenancy by the entirety without his co-tenant's consent, "there is nothing in New York law that prevents [a co-tenant] from mortgaging or making an effective conveyance of his or her own interest in the

tenancy." *V.R.W., Inc.*, 68 N.Y.2d at 565. "To the contrary, each tenant may sell, mortgage or otherwise encumber his or her rights in the property, subject to the continuing rights of the other." *Id.* Thus, the court's method of forfeiture aligns with applicable New York law: it effects a conveyance of Defendant's rights in the property, subject to the continuing rights of Ms. Kurland. *Lee*, and its application of Florida law, is inapposite. (*See* Second Third-Party Claim ¶ 30 (discussing *Lee*); First Third-Party Claim ¶ 26 (same).)

In sum, because the applicable law establishes that Ms. Kurland has no legal interest in *the Defendant's interest* in the Property, and the proposed manner of forfeiture preserves Ms. Kurland's interest in the Property, the court grants the Government's motion to dismiss Ms. Kurland's First and Second Third-Party Petitions. The court further directs the Government to submit a proposed Amended Preliminary Order of Forfeiture as to Substitute Assets (1) reflecting that the Government and Ms. Kurland hold title to the Property as co-tenants sharing a tenancy in common; and (2) including references to the Government's right of survivorship tied to Ms. Kurland's life, and Ms. Kurland's right of survivorship tied to the Defendant's life.[5]

---

[5] Although Ms. Kurland does not request a hearing on her Petitions pursuant to § 853(n)(2), the court nevertheless concludes that a hearing is unnecessary because Ms. Kurland cannot establish an entitlement to relief. *See Pacheco v. Serendensky*, 393 F.3d 348, 351-52 (2d Cir. 2004) ("Where a petitioner is not able to demonstrate a prima facie entitlement to relief, courts have routinely dismissed third-party petitions without a hearing."); *United States v. Watts*, 786 F.3d 152, 161 (2d Cir. 2015) ("Without proceeding to a formal hearing, however, the 'court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason.'" (quoting Fed. R. Crim. P. 32.2(c)(1)(A))).

### B. The Stipulation

The Government and Ridgewood submitted a joint stipulation and proposed order purporting to set forth their rights and obligations with respect to the Property. (*See* Stipulation & Proposed Order.) The Stipulation provides, among other things, that "[t]he United States of America hereby recognizes that Ridgewood, and its successors and assigns, have a valid lien and legal right, title and interest in the Substitute Asset, and such right, title, and interest is superior to the interest, if any, of the Government in the Substitute Asset." (*Id.* ¶ 1.) The Government and Ridgewood further stipulate that:

> Upon the sale of the Substitute Asset, pursuant either to a Final Order of Forfeiture in this criminal matter forfeiting all right, title and interest in the Substitute Asset to the United States, or pursuant to an interlocutory sale order in this criminal matter, the United States acknowledges the lien rights of Ridgewood and its successors and assigns, and agrees to satisfy, from the proceeds of the sale of the Substitute Asset, the Note and applicable interest charges and late charges on the same.[6]

(*Id.* ¶ 3.) Additionally, the stipulation provides that "the Court shall have exclusive jurisdiction over the interpretation and enforcement of this Stipulation and Order." (*Id.* ¶ 8.) The

---

[6] This provision apparently requires the Government to satisfy the Note and applicable interest upon the sale of the Property pursuant to either (A) a final order of forfeiture forfeiting *all* right, title, and interest in the Property to the Government, or (B) pursuant to an interlocutory sale order in this criminal matter. (Stipulation & Proposed Order ¶ 3.) However, the current forfeiture order does not contemplate either of these events: the final order of forfeiture as to substitute assets will forfeit only the *Defendant's interest* in the property, and the Government has not requested an interlocutory sale order as to the Property. In fact, the Government represents that it "is not seeking to force a sale of the Property." (Gov't Response to Second Claim at 1.)

Stipulation is signed by the Government, a representative of Ridgewood, and Ridgewood's attorney, and it provides a space for the court to so-order the Stipulation. (*Id.* at 3.)

While the court reaches no conclusion as to the enforceability of the Stipulation, it declines to sign the Stipulation or exercise exclusive jurisdiction over its enforcement and interpretation. Ridgewood is not a party to this action—instead of filing a formal third-party petition asserting its interest in the Property, Ridgewood and the Government submitted this Stipulation. Thus, to the extent Ridgewood wishes to establish, in *this court,* its rights with respect to the Property, Ridgewood may file a formal third-party petition, or the Government may amend the Preliminary Order of Forfeiture as to Substitute Assets to reflect Ridgewood's purported rights with respect to the Property. *See Kogan,* 2022 WL 3362452, at *8 (directing the Government "to amend both Orders of Forfeiture to include Wells Fargo's mortgage interests," where Wells Fargo maintained a "valid mortgage interest" in the substitute assets and had filed third-party petitions asserting that interest). But the court will not sign, much less exercise exclusive jurisdiction over, the Government and Ridgewood's Stipulation.

**IV. CONCLUSION**

For the reasons set forth above, the Government's motion to dismiss Ms. Kurland's First and Second Third-Party Petitions is GRANTED, and the Government is DIRECTED to submit a proposed Amended Preliminary Order of Forfeiture as to Substitute Assets by April 18, 2025

SO ORDERED.

Dated:    Brooklyn, New York
          March 17, 2025

                                    s/Nicholas G. Garaufis
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge